### WILLIAM GENSEN V. OHIO OIL CO.

1. CHARGE IMPOSING TOO GREAT A BURDEN UPON PLAINTIFF.

   A charge in an action for personal injuries, that if plaintiff "knew or could have known" of the defects in the machinery and the dangers to be encountered in the work, he was guilty of negligence in performing it, imposes too great a burden upon such plaintiff, in that it makes him responsible for what he might have known by the exercise of extreme, instead of reasonable, care.

2. NOT PREJUDICIAL WHERE PLAINTIFF ADMITS KNOWLEDGE.

   But where it clearly appears, from the evidence or from plaintiff's, admission in such action, that plaintiff knew of the defects in the machinery and the dangers to be apprehended in the work, a charge that if plaintiff "knew or could have known" thereof, he could not recover, though objectionable, cannot be regarded as prejudicial or reversible error.

3. OBJECTIONABLE CHARGE APPLIES TO MATERIAL FACTS ONLY.

   In order to make a charge that if plaintiff "knew or could have known" of the danger to be incurred prejudicial or applicable to defects and consequent dangers not admitted or appearing to have been within plaintiff's knowledge, it must appear that such defects were the proximate cause of the accident. A mere causal connection, unless there is also a natural and unbroken sequence, and absence of intervening causes, is not sufficient.

4. CAUSE INTERVENING WHICH DEFEATS RECOVERY.

   Where, in removing or inserting sucker rods in an oil well, by experienced employees, an order was given by the foreman to a person in charge of the tubing line, which was required to be kept taut in order to prevent the elevator from falling, directing him to leave his station and go to another place to start the engine, which, by reason of defects, had stopped, the voluntary action of such employee in obeying such order, though knowing that the result of releasing the tubing line would endanger him, is a cause intervening which will defeat recovery, on account of defective machinery, for resulting injuries.

5. EMPLOYING KNOWING DANGERS OF OBEYING ORDERS.

   Under circumstances stated in the preceding paragraph, where such employee knew that leaving his station at the tubing line would cause the elevator to fall, even if the order directing him to do so had been accompanied by a threat that he would lose his employment if he failed to obey it, he would not be excused for doing so or entitled to recover for resulting injuries.

*Baldwin & Harrington*, for plaintiff in error.

*Troup & Dunn*, for defendant in error, cited:

Error must be prejudicial: Scovren v. State, 6 Ohio St., 288; McHugh v. State, 42 Ohio St., 154.

Assumption of risk: 1 Thompson on Neg., 169; Coal Co. v. Estievenard, 53 Ohio St., 43 [40 N. E. Rep., 725]; Roul v. Railroad Co., 11 S. E. Rep., 558 [85 Ga., 197].

HEARD ON ERROR.

The plaintiff in error brought an action in the court of common pleas against the defendant in error to recover damages on account of injuries received through the alleged negligence of defendant in error. The case was tried to a jury which returned a verdict in favor of the defendant. A motion for a new trial was overruled and judgment was entered on the verdict.

Plaintiff avers in his petition that he was a servant of the defendant, engaged in the pumping of oil wells, and the operations incident thereto. That one —— Bulger, also an employee of defendant, was a foreman, under whose direction and subject to whose orders plaintiff was at work. That while engaged with said foreman in pulling sucker rods from an oil well, the sucker rod elevator, a steel apparatus of considerable weight, when at a great height above the floor of the derrick upon which plaintiff was at work, become detached from the elevator hook at the end of the tubing line, and from the sucker rods, and fell upon plaintiff, greatly injuring him.

He charges that the company was negligent in the following respects and particulars:

That the hook at the end of the tubing line was so large that it did not enter the eye in the elevators completely or securely.

That the elevators were defective in that they did not properly and securely grasp the sucker rods.

That the steam engine used in the operation was defective in that it would stop on a center, and that it was not provided with a " telegraph line " that would enable one to start it off center while standing near the middle of the derrick floor, but to start it a person was required either to go to the engine or to the " bull wheel."

Also that defendant did not provide sufficient working force to safely carry on the work.

That on the occasion when he was injured, while the elevator was suspended above his head in the derrick, and while plaintiff was engaged,

in holding the tubing line taut, so that the elevator would not become detached therefrom, and from the sucker rods, and fall, the engine stopped on center and Bulger directed plaintiff to go to the bull wheel to start the engine. That plaintiff obeyed the order and in doing so allowed the tubing line to become slack and the elevator to become detached and to fall, with the result before stated.

Defendant denied all the alleged defects in the machinery and appliances, the giving of the alleged order, that Bulger was foreman over plaintiff, that there was insufficient working force, and an act of negligence, and alleged that the accident and plaintiff's injuries resulted from his own negligence.

PARKER, J.:

The question seriously debated here arises upon certain instructions to the jury on the subject of contributory negligence given by the court at the request of counsel for defendant which were excepted to by the plaintiff.

There is a number of them, but the reading of one will indicate the alleged fault in the others.

" If the plaintiff knew or by his experience could have known of the dangers " he encountered he was guilty of contributory negligence, etc., running through a number of these requests is that language: " If the plaintiff knew or could have known."

It is contended that the charge is faulty because it imposes too great a burden on the plaintiff. That it should have been " if he knew or by the exercise of reasonable care or diligence might have known;" that as it is, it makes him responsible for what he might have known by the exercise of most extreme care, or for information that he might possibly have obtained. We are of the opinion that the charges are open to that criticism and objection; that they are faulty and erroneous in that particular. But it does not necessarily follow that they were prejudicial, or that the judgment should be reversed. In order to determine that we must look farther.

It is conceded, and the record shows, that the plaintiff Genson was well aware of the fact, if it were a fact, that the tubing hook did not fit into the elevator; that he was an experienced man in these operations, and, according to his own testimony, he called the attention of the foreman to the fact that the hook did not fit in the elevator and that there was some danger in consequence thereof. He says he knew of that defect and was apprehensive of the danger; that he knew that it would be dangerous to operate with that defective appliance. So that when we apply these charges to that situation—to the matter of the hook not fitting into the elevator, it is apparent that they could not be prejudicial to the plaintiff in error. It could not have been prejudicial to say " if he could have known " of a certain defect and danger when by his own admissions he knew all about both the defect and the danger.

But it is said that the claim is founded upon negligence in various particulars and that this is only one; that there was a combination of causes, of which this is but one. That among those causes as charged in the petition was the absence of a telegraph line and a defect in the engine by which it stopped on a center, and that there is no evidence tending to show, or at least it does not appear clearly from the evidence, that the plaintiff was aware of these defects and deficiencies, and that, therefore, when these charges are applied to the defendant's relation to the defec-

tive engine, and the absent telegraph line, they become prejudicial to him.

I shall not attempt to describe a rig for drilling an oil well, but it will be sufficient to say that these parties were engaged in either pulling sucker rods from a well or the lowering of sucker rods into a well. There is some question in the testimony which operation they were engaged in, but it would make no difference, the method of producing would be practically the same. The plaintiff was standing near Mr. Bulger near the bull wheel, to hold the tubing line taut, so there should be no slack in it, it being agreed by all that if the tubing line were allowed to become slack there would be great danger of the hook dropping out of the elevator and the elevator dropping to the floor of the derrick, whereby someone might be injured. Now the plaintiff states that he stood at the tubing line and performed that service, but that in the course of the performance of that service the engine, on account of this alleged defect, was stopped on a center; that it became necessary to start the engine by going to the bull wheel and turning it, to throw the engine off center; that it was necessary either to do that, or for the foreman to leave his station at the lever and go to the engine; that they could not all occupy their particular stations at which they had been placed and stay at work, and at the same time start the engine; and plaintiff says he was directed by Bulger to go to the bull wheel and start the engine, and that in doing so he left the tubing line. It is not quite apparent that it became necessary to leave the tubing line, but perhaps it was; at all events he did that. Whether he started the engine or not, is not quite clear from the testimony, but it is averred in the petition that he did start the engine. He left the tubing line, it became slack, and what was apprehended in that event, occurred. The elevator, a heavy piece of iron, became detached from the hook when about thirty feet above the floor and became loosened from the sucker rod and fell down upon the head of the plaintiff and injured him seriously. There is no evidence tending to show that the engine started with a jerk, as averred in the petition, and that this jerking operated upon the tubing line or any of the appliances so as to liberate the elevator and cause it to fall. If the engine were started, there is nothing in the evidence tending to show that the starting or running of the engine had anything to do with the falling of the elevator.

The question therefore arises whether the averments and proof, or the evidence tending to prove that the engine was defective in the particulars alleged, or that there was an absence of the telegraph line, and that that was a fault in the construction of the apparatus, whether either fact is at all material in this case; whether these erroneous charges could have properly applied to such defects or deficiencies in the machinery and appliances. The actionable cause of the injury must be the direct and proximate cause. The question is, therefore, whether these defects could have been in the light of the evidence, together or separately, the proximate cause or part of the direct and immediate occasion of the accident.

The proximate cause, as alleged and proved, or as the testimony tends to prove, was the slacking of the rope, combined, perhaps, with the bad fitting of the tubing hook in the eye of the elevator. The negligence alleged, and the negligence the evidence tends to prove, was in the use of a badly fitting tubing hook combined with an order to the plaintiff to leave the tubing line and go to the other service. The lack of the telegraph line whereby steam could not be cut off and let onto the engine readily, and the alleged defect in the engine whereby it stopped

on a center, while they, one or both, may have given rise to the occasion or necessity for some one starting the engine by turning the bull wheel over, and may have caused Bulger to give an improper order, were not, either of them, a proximate cause, nor were they both the proximate cause or proximate causes of the injury. There is a causal connection between these alleged defects and the accident, but there is lacking that natural and unbroken sequence, without intervening efficient causes, necessary to be shown to entitle the plaintiff to recover on account of such alleged defective or deficient machinery and apparatus.

If, as intimated in the amended petition, though not clearly charged, these defects caused a jerking of the tubing line whereby the elevator was disturbed, and loosened, and so fell, the case would be quite different. But there is not an iota of evidence tending to prove this, or that these alleged defects in any way operated upon the elevator to cause it to fall. The testimony tends to show that their only effect, if any, by way of causal connection, was to produce the improper order from Bulger, and it cannot be said that they made this particular order to the plaintiff necessary, much less can it be said that they made his compliance therewith necessary.

The order, if given, was part of the direct and proximate cause, and back of this voluntary action of a person exercising free will, it is impossible to go, because such voluntary action is an intervening efficient cause. No matter what produced the order, it was upon the order that the plaintiff acted; and if such order was wrong, and obeying it would put the plaintiff in peril, and plaintiff obeyed it properly and without fault or negligence on his part, whether the occasion of the unnecessary order arose through faulty operation of defective machinery, or whether it was given without occasion, is a question of no consequence in this case. Plaintiff was directed to leave his duty of watching the slack. Whether told to stand idle or to go to the bull wheel to start the engine or to do some other thing not calculated to start the engine, and that did not move the engine, makes no difference. It was not the moving of the engine that produced the injury, but the loosening of the slack in the tubing line. If the engine had been moved without the slack being loosened there would have been no accident. This is entirely clear from the evidence; there is no evidence tending to prove the contrary.

It must be held, therefore, that evidence tending to show the existence of these defects and shortcomings, as to the engine and telegraph line, and that plaintiff was ignorant thereof, was wholly immaterial, and did not tend to make out plaintiff's case; and it follows that the charge as to knowledge of defects as applied to these alleged defects could not be prejudicial.

There is no evidence tending to show insufficient working force, except at times when Bulger was absent, and as the accident did not occur then of course that is immaterial.

The same is true of the allegation that the elevator was defective, that it did not properly grasp the sucker rods.

That I believe disposes of the questions involved. But it is worthy of remark that in our judgment the evidence shows that the plaintiff was clearly guilty of negligence in the premises that would preclude a recovery on his part. That question was submitted to the jury and a verdict for defendant was found upon it, and we will simply say we think the verdict of the jury is right. The fact that this order was given to plaintiff

would afford no excuse whatever to him to leave his station and go to another place; he knew the situation and knew that if the slack was allowed to occur in that rope, the elevator would probably fall; and there was no such exigency, no such necessity for him to act or to obey the order, as would excuse him; and even if the order had been accompanied by a threat that he would lose his employment, if he did not obey it, even that, under the circumstances, would not excuse him. So we are of the opinion that this judgment should be affirmed.